[No. 2058.]

LORENZO TARIN *v.* THE STATE.

THEFT — FACT CASE. — See the statement of the case for evidence *held* insufficient to support a conviction for horse theft, because it leaves the ownership in doubt, and tends strongly to prove that the defendant claimed the property in good faith and upon reasonable grounds.

APPEAL from the District Court of Atascosa. Tried below before the Hon. D. P. Marr.

The appellant in this case was convicted under an indictment which charged him with the theft of two horses, the property of Manuel Leal, in Atascosa county, Texas, on the 15th day of June, 1884. His punishment was assessed at a term of five years in the penitentiary.

Manuel Leal was the first witness for the State. He testified that for the sixteen years immediately preceding this trial he had been in full and exclusive charge of Antonio Seguin's horse-stock. He lived about two and a half miles east from Pleasanton in Atascosa county. Among the Seguin horses in charge of the witness was a certain black or brown mare, and her black or brown colt. Witness saw the colt in the possession of the defendant, at his, the defendant's, stock-pen, about two and a half miles from Pleasanton. Defendant on that occasion claimed the said colt as his property. The colt was then in the defendant's brand, and was about one year old. Witness did not know it by its flesh-marks. He had never seen Seguin's colt until he saw it in the defendant's pen. Witness had never given his consent to the defendant to take that colt. He was unable to say whether or not Seguin had ever consented that the defendant should take it. The defendant was in the pen when the witness saw the colt, and claimed to own it. He told witness that Seguin's mare had a filly, but no colt.

Juan P. Gonzales was the next witness for the State. He testified that he was authorized by Manuel Leal to brand one of Antonio Seguin's colts, which, with other horse-stock belonging to Seguin, was in the charge and under the control of the said Leal. The colt referred to was a black or brown animal, the offspring of a gentle mare that belonged to Seguin. Witness drove the mare and colt into the pen of Ignacio Sotello, in Atascosa county, for the purpose of branding it. The mother of the colt was in Seguin's brand, which the witness could not make out, although he thought

it was S on the jaw and CHC connected, the first C reversed, thus
ɔ.   He had known the colt about six months, and had seen it suck-
ing its mother, the Seguin mare, once or twice.   While the witness
had the mare and colt in Sotello's pen, for the purpose of branding
the colt, the defendant came and claimed the colt as his property
and took it away, and when the witness next saw the animal it was
in the defendant's brand.   Witness went with Leal to defendant's
place to recover the colt, but when they got to defendant's pen
they found only the old mare.   The colt had been taken away.
Witness did not know of his own knowledge who branded the colt.
The defendant told the witness that the colt belonged exclusively to
him, and that nobody else had any right to its possession.   This all
occurred in the summer of 1884.

Cross-examined, the witness stated that he knew Francisco Far-
rias, who was in no way related to Manuel Leal, so far as the wit-
ness knew.   Some fifteen days elapsed between the time, just before
witness received authority to brand the colt, he saw it on the range,
and the day he penned it for the purpose of branding it.   The colt
was a black or brown animal.   Witness could not remember whether
or not it had a star in the forehead and a white foot.   He never saw
the colt after he got authority to brand it until he penned it.   Wit-
ness could not say how often, altogether, he had seen the colt on
the range, but certainly as often as a half dozen times.   He had
known the colt about six months.   It was about a year old when
witness saw it with defendant's brand on it.   Witness was abso-
lutely certain that the colt described was the very same colt he had
seen sucking Seguin's mare.   It was a brown filly colt.   It had no
white about any of its feet or forehead.   It was a "maverick" or
unbranded colt, and was the offspring of Seguin's mare.

Ignacio Sotello was the next witness for the State.   He testified
'that Juan P. Gonzales, in June or July of 1884, penned a mare and
filly colt, at his pen in Atascosa county, Texas.   While those ani-
mals were in the pen, the defendant came and claimed the colt, say-
ing that "they" were trying to take his colt away from him.   He
asked witness who penned the animals.   He said: "They have
penned Seguin's mare and my colt, and are trying to make the mare
adopt the colt."   The colt was a brown filly colt, about fifteen
months old, and was the offspring of Seguin's mare.   Witness had
known the mare and colt about twelve months.   Witness afterwards
saw the same colt in the defendant's brand.   Seguin's brand, as de-
scribed by the witness Gonzales, was on the mare.   The two ani-
mals ranged about the country adjacent to the places of the witness

and the defendant.  The defendant, when he claimed this colt, said that the colt foaled by Seguin's mare was a bay filly colt older than the one in question.  The animal claimed by defendant, the one involved in this controversy, was a brown filly with no white about head or foot.  The colt of Seguin's mare was a brown filly with no white about head or foot.

When the defendant first reached witness's house on the day that the mare and colt were penned, he asked if witness had penned those animals.  Witness answered that he did not then even know that they were in his pen.  He had not then seen the mare and colt for the period of a month.  When he had last seen them, they were running on the range in a herd of horses led by a white stallion. The mare was a pure brown animal.  The witness had never seen her with a bay colt.  The colt, when the witness next saw it after it was taken from his pen by the defendant, was in the defendant's brand — the letters L T with the figure 4 under them.  The defendant claimed that as the colt of the offspring of one of Teuton's mares which he had been keeping on shares, and it had fallen to him as his share of the mare's increase.  Witness had seen the colt in dispute suck the Seguin mare three times at least; once about two months before the two animals were penned at his place by Gonzales.  Witness was absolutely positive that this colt was the offspring of Seguin's mare.  The witness knew that Francisco Farrias was a nephew of Antonio Seguin.

A. D. Postert was the next witness for the State.  He testified that he went with Manuel Leal to the defendant's pen, and found the defendant and his brother holding a mare down and milking her.  As witness and Leal rode up to the pen they let the mare up, and one of them said that the mare was dry and had no colt.  Leal told the defendant that he had come for "that" colt, and that unless it was delivered to him, he would institute suit for it.  Defendant again said that the brown mare had no colt, and insisted that he himself owned the colt in dispute.  Leal replied that the defendant was a liar; that the colt belonged to Seguin, and was under his control.  Defendant again replied that the colt was his, but said that rather than have a troublesome lawsuit about it, he would buy it. Leal replied that he, the defendant, had given him a great deal of trouble, and would have to pay him $30 for the colt.  Defendant then gave Leal a horse worth $25 and promised to pay him $5, in the future.  This settlement between defendant and Leal occurred late in July, 1884, and before the indictment in the case was preferred.  The suit threatened was a civil action for the colt.  Witness

did not see that defendant and his brother got even a drop of milk from the mare on the occasion spoken of.

Manuel Leal, recalled by the State, testified that he instituted civil proceedings against defendant for the value of the colt. Defendant paid witness in full for the animal after the civil suit was filed.

The records of brands and marks of Atascosa county showed the brand described by Gonzales in the name of Antonio Seguin. It was recorded December 16, 1857. The State rested.

Clem Lamont was the first witness for the defense. He testified that he followed the stock business in Atascosa county, and was on the range pretty much all of his time. He attended his own and other people's horse-stock for a living. He knew the Seguin mare and the colt in dispute quite well. The only mare of Seguin's which witness had seen in that range for years was a brown animal in Seguin's brand. Her colt was a bay filly with a white foot and a star in the forehead. The mare described and her colt, the bay filly, ranged near the houses of the witness and the defendant, and below Pleasanton, on the Atascosa river. Witness often saw the bay filly colt following the mare and sucking her, in the year 1884. He had seen the mare and bay colt on the range with other horses and alone. He had never seen the mare without her bay colt after its birth, until the summer of 1884. He had often seen the mare and her colt in bunches of horses in which there were other colts. The colt claimed by the defendant is a black or brown animal, and is not the colt of the Seguin mare. Witness had often seen that colt, the last time about a week before this trial, near Pleasanton. He had not seen the bay colt of the Seguin mare since the summer of 1884, when it disappeared from the range. The witness was absolutely certain that the colt involved in this prosecution and claimed by the defendant is not the offspring of the Seguin brown mare. It has no white about it — no white in the face or on the feet, as that mare's colt had. Defendant owned several horses in 1884, and was then attending Teuton's stock on shares. The brown colt involved in this controversy sucked a sorrel mare owned by Simon Rojo. The defendant does not and never claimed to have authority from Seguin to take any of his, Seguin's, colts.

L. W. Pearce was the next witness for the defense. He testified that he lived in the town of Pleasanton, Atascosa county, in 1884, and was engaged in the stock business. He knew Seguin's stock and brand, and the particular mare which figures in this case. That mare had a colt following her in the spring of 1884, which was

either a bay or a brown animal, the witness was not certain which. Witness saw that mare and colt together on the range below Pleasanton several times in 1884, but had seen neither of them since the summer of that year. Witness had often seen the colt claimed by the defendant, and for the theft of which he was now on trial. He saw that colt the last time but very recently. He did not think the colt involved in this prosecution was the colt that followed S 'guin's mare up to the summer of 1884. The colt in controversy does not correspond in color and appearance to the Seguin colt, as witness recollected the latter. The Seguin was an older and finer looking animal.

Jeff Austin was the defendant's next witness. He testified that, in 1884, he lived near the town of Pleasanton, and near the house of the defendant. He knew Seguin's horse-stock, his brand, and the brown mare described by preceding witnesses. That mare had a bay colt which followed her continually up to June, 1884, when the witness last saw it. On his way home from work late one evening in that June, witness saw that bay colt tied to a tree near the path traversed by the witness. Witness went back early next morning to look at the colt, and found Seguin's brown mare trotting around trying to get it to follow her off. No other horses were near it. While looking at the mare and colt, Francisco Farrias, the nephew of Seguin, came and got the colt and took it off, since which time the witness had never seen it. The defendant was not at home at that time. Witness was absolutely certain that the colt now in possession of the defendant, and which he is accused of stealing, is not the colt of the Seguin brown mare. The mother of the colt in dispute was a sorrel mare. Witness last saw the Seguin brown mare in July, 1884. The bay colt was not then with her, nor was any other colt. The witness and defendant had quarreled and were not friends. Francisco Farrias was a Mexican who lived on the San Antonio river.

George Mallory testified, for the defense, that he knew both the bay colt of the Seguin mare and the colt claimed by defendant. They were two different and distinct animals. Seguin's mare and her colt had been in witness's herd often. Her colt was a bay animal with a star in its face and a white hind foot.

James Little testified, for the defense, that he knew the colt of Seguin's brown mare well. It was a different animal than the one involved in this prosecution.

Mrs. Frances Austin, the wife of Jeff Austin, testified for the defense. She testified that Francisco Farrias, leading a bay colt

with a "jacamo" (head-stall of. a rope halter) on its head, passed near her house late one evening in June, 1884. The colt was closely followed by a brown mare. Farrias tied the colt near the house. Witness's husband went to where the colt was tied, early on the next morning, a few minutes before Farrias returned and took the colt off. Witness had not seen the colt since. Defendant was not at home when this happened. The defense closed.

S. D. Camp was then called by the State. He testified that he was deputy inspector of hides and animals in Atascosa county, Texas, in 1884. In June, 1884, when defendant was making a sale of stock to Van Mugrave, he brought several animals to witness to inspect. Witness refused to certify two mares because of want of the bill of sale, and a dark brown filly colt because her brands were too fresh.

No brief for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. Even those of the State's witnesses who testify that the colt in controversy was the colt of Seguin's mare state that defendant openly and publicly and at all times claimed that the colt was his property. Four witnesses for the defense, who testify that they knew Seguin's mare and colt, testify positively that the colt in question was not the Seguin colt, but was the property of defendant. If the suit had been a civil action between Seguin and defendant as to the ownership of the colt, and a verdict had been rendered finding the ownership to have been established in defendant, we could not have set the verdict aside as being against or unsupported by the evidence.

As made to appear in the statement of facts before us, the evidence is wanting in that cogency and conclusiveness essential to a conviction for theft, and the judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered November 14, 1885.]